No. 94-213

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Appellant,

  v.

ERNEST GRANT PINKERTON,

      Defendant and Respondent.

FILED

MAR 17 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Hon. Joseph P. Mazurek, Attorney General; John
Paulson, Assistant Attorney General, Helena, Montana

          Mike Salvagni, Gallatin County Attorney; Gary Balaz,
Deputy County Attorney, Bozeman, Montana

      For Respondent:

          John M. Kauffman, Gallatin County Public Defender,
Bozeman, Montana


Submitted on Briefs:  January 26, 1995

Decided:  March 17, 1995

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The State of Montana appeals the decision of the Eighteenth Judicial District Court, Gallatin County, granting defendant Ernest Pinkerton's motion to dismiss. We reverse.

The issue is whether the District Court erred in granting Ernest's motion to dismiss the two-count information filed against him.

On July 16, 1993, the Gallatin County Attorney's Office filed an affidavit of probable cause and a motion for leave to file an information charging Ernest with misdemeanor domestic abuse in violation of § 45-5-206, MCA, and felony assault in violation of § 45-5-202, MCA. The affidavit of probable cause was based on statements made by Ernest's wife, Nadeen Pinkerton. Nadeen initially made an oral statement to a law enforcement officer the night of the incident and later supplied a written statement containing similar allegations. Nadeen subsequently supplied the Gallatin County Sheriff's Office with a second written statement in which she recanted crucial allegations that she had made in her previous oral and written statements.

Nadeen's initial statements alleged the following facts. On the evening of July 3, 1993, Ernest and Nadeen were drinking at the Fifth Ace Saloon in Gallatin Gateway. Nadeen and Ernest got into an argument and Ernest left the bar on foot. Nadeen also left the bar, got in her vehicle, and proceeded home. Nadeen picked up Ernest on the way, and the two drove home together. Once home, the couple continued to argue. During the argument, Nadeen alleged

2

that Ernest grabbed her by the throat and threw her on the couch. She also claimed that Ernest grabbed her hair and dragged her toward the door.

Nadeen decided to leave. She packed some belongings and took them to her vehicle. As she began to leave, Nadeen observed Ernest in his pickup truck preparing to leave the residence. Believing that Ernest was intoxicated, and knowing that his truck's brake lights and tail lights were not operating, Nadeen positioned her vehicle behind his truck to prevent him from leaving. Ernest backed his truck into Nadeen's vehicle and the vehicles became locked together.

Nadeen claimed that Ernest exited his truck brandishing a .22 caliber pistol. Ernest pointed the gun at Nadeen, who was still sitting in her vehicle, and threatened to kill her unless she rolled down the window and gave him all his money. Nadeen complied. Ernest continued to point the cocked and loaded gun at Nadeen as he counted the money.

Nadeen alleged that Ernest slapped her twice in the head and threatened that if she ever returned he would kill her. Ernest eventually separated the two vehicles and Nadeen left the residence in her vehicle. Nadeen drove to Bozeman and contacted the Gallatin County Sheriff's Office.

Nadeen met with a sheriff's deputy and recounted these allegations. The deputy observed swelling and discoloration around Nadeen's eye. Nadeen remarked that her head hurt and showed the deputy loose clumps of hair that she removed from her scalp. She

3

told the deputy that she feared for her life when Ernest pointed the gun at her.

Ernest was arrested in the early morning hours of July 4, 1993, and questioned about the incident. He admitted that he and his wife argued at the saloon. Ernest also admitted that the argument escalated into a physical confrontation. However, he claimed he did not point the gun at Nadeen, but rather removed the gun from the house and took it to his truck to prevent Nadeen from having access to it.

Nadeen later supplied the sheriff's office with a second written statement in which she recanted several of her previous allegations. In the second written statement, Nadeen stated that Ernest did not point the gun at her. Rather, she claimed Ernest observed the pistol on the seat of her vehicle while the vehicles were locked together. He then removed the gun from her vehicle and put it in his truck. Nadeen's second written statement again alleged a physical confrontation between Ernest and herself.

On February 10, 1994, Ernest moved to dismiss the charges against him. He claimed that there was insufficient evidence to convict him of the felony assault charge. He moved for dismissal of the misdemeanor domestic abuse charge, claiming that because he had not been brought to trial within six months of his arraignment, he was entitled to a dismissal pursuant to § 46-13-401, MCA.

The District Court granted Ernest's motion to dismiss. The court concluded that the State lacked sufficient evidence to convict Ernest of felony assault. In dismissing the misdemeanor

4

domestic abuse charge, the court concluded that the six-month statutory period did not bar the misdemeanor prosecution while it was joined with the felony assault charge. However, because the felony was dismissed, the misdemeanor must stand on its own. Because it had been more than six months since Ernest was arraigned on the misdemeanor charge, and no other good cause being shown, the court concluded that the misdemeanor domestic abuse charge must also be dismissed. The State appeals.

Did the District Court err in granting Ernest's motion to dismiss the two-count charge against him?

Because the District Court's rationale for dismissing the misdemeanor domestic abuse charge depended upon the dismissal of the felony assault charge, we first discuss the dismissal of the felony assault charge. Section 46-13-401(1), MCA, reads:

> The court may, either on its own motion or upon the application of the prosecuting attorney and <u>in further-</u>
> <u>ance of justice</u>, order a complaint, information, or indictment to be dismissed. However, the court <u>may not</u>
> <u>order a dismissal of a complaint, information or indict-</u>
> <u>ment, or a count contained in a complaint, information or</u>
> <u>indictment, charging a felony, unless good cause for</u>
> <u>dismissal is shown</u> and the reasons for the dismissal are set forth in an order entered upon the minutes. [Emphasis added.]

Our standard of review is whether the District Court abused its discretion by dismissing the information. State ex rel. Fletcher v. Nineteenth Judicial District Court (1993), 260 Mont. 410, 413-14, 859 P.2d 992, 994; State v. Schwictenberg (1989), 237 Mont. 213, 216, 772 P.2d 853, 856. This Court recently stated:

> The legislature has not attempted to define the phrase "in furtherance of justice" ., hence it is left for judicial discretion exercised in view of the constitu-

tional rights of the defendant and the interests of society to determine what particular grounds warrant the dismissal of a pending criminal action.

State v. Cummins (1993), 257 Mont. 491, 493, 850 P.2d 952, 953, (quoting State ex rel. Anderson v. Gile (1946), 119 Mont. 182, 187, 172 P.2d 583, 586).

The District Court determined that, regardless of how Nadeen ultimately testified at trial, the State would have insufficient evidence to convict Ernest. However, because the District Court dismissed the information prior to trial, it did not hear Nadeen's testimony. The court also did not independently examine Nadeen's prior statements made to law enforcement. Rather, it relied solely on the parties' interpretation of these statements.

While prior out-of-court statements made by a declarant are generally inadmissible as hearsay, such statements are admissible and can be used as substantive evidence under Rule 801(d) (1) (A), M.R.Evid., which states:

> (d) Statements which are not hearsay. A statement is not hearsay if:
> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony .

Thus, if Nadeen testifies at trial that Ernest did not point a gun at her head, the State can introduce her first statement as a prior inconsistent statement. The prior inconsistent statement can be used as substantive evidence as well as to rebut her trial testimony. State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343, cert. denied, 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 118.

6

The District Court concluded that a conviction cannot be based solely on a prior inconsistent statement. The court relied on a series of cases which state that a criminal conviction cannot rest solely on a prior inconsistent statement. See State v. White Water (1981), 194 Mont. 85, 634 P.2d 636; Utah v. Ramsey (Utah 1989), 782 P.2d 480; Brower v. Alaska (Alaska Ct. App. 1986), 728 P.2d 645.

White Water, Ramsey and Brower are all cases in which the witnesses testified at trial inconsistently with their previous statements. Those cases held that a conviction could not rest solely on a unsworn, out-of-court prior inconsistent statement. In the present case, because the information was dismissed prior to trial, there is not yet a prior inconsistent statement. Nadeen gave two contradictory written statements to the Gallatin County Sheriff's Office. However, until she makes a statement in court, neither of these is a prior inconsistent statement under the rules of evidence.

Likewise, because this case has not yet gone to trial, it is unclear whether the potential prior inconsistent statement would be the State's sole basis for seeking a conviction. In State v. Charlo (1987), 226 Mont. 213, 735 P.2d 278, we upheld a conviction based primarily on a prior inconsistent statement but which was also corroborated by other circumstantial evidence. Charlo, 735 P.2d at 280. Thus, while a prior inconsistent statement standing alone is insufficient to sustain a conviction, a corroborated prior inconsistent statement may suffice.

The State contends that it will produce corroborating evidence such as: (1) Nadeen's appearance and demeanor shortly after the incident, (2) Ernest's admission that he did have physical possession of the gun at the time of the incident, (3) testimony concerning the couple's behavior at the Fifth Ace Saloon during the evening in question, and (4) the recovery of a loaded gun from the Pinkerton residence. Until the State presents its case-in-chief, it is unclear what corroborating evidence it can produce.

Ernest argues that this case is more like White Water than Charlo in that the witnesses in Charlo did not explicitly make an inconsistent statement at trial, but rather, they merely claimed that they could not remember what happened. However, this further bolsters the State's argument. Neither the State nor Ernest knows what Nadeen will say at trial. She may testify that she cannot remember what happened. The State should have the opportunity to call Nadeen to determine how she will testify under oath and to produce corroborating evidence. Only after the State presents its case-in-chief can the District Court properly determine if this is a case of an uncorroborated prior inconsistent statement such as White Water or a case of a corroborated prior inconsistent statement such as Charlo.

Nadeen may also testify that Ernest did point the gun at her. She may likewise have a reasonable rationale for making her second written statement in which she claimed he did not point the gun at her. If she testifies that he did point the gun at her, the State

8

would not need to rely on a prior inconsistent statement.  Rather, it would be relying on the victim's sworn, in-court testimony.

The District Court concluded that if Nadeen testifies that Ernest pointed the gun at her, Ernest could introduce her second written statement to law enforcement as a prior inconsistent statement.  The District Court stated, "[g]iven such inconsistent evidence and the lack of independent evidence to support a conviction, a reasonable jury could not conclude that guilt had been proven beyond a reasonable doubt."

Neither the District Court nor Ernest cite any authority for this proposition.  The State, on the other hand, cites State v. Maxwell (1982), 198 Mont. 498, 647 P.2d 348, for the proposition that a conviction can rest solely on a victim's uncorroborated, in-court testimony even if the victim has given a prior inconsistent statement.  While we note that this Court's holding in Maxwell was specifically limited to cases involving victims of sexual inter-course without consent, similar policy reasons exist in this case.  Like a victim of sexual intercourse without consent, a battered and threatened spouse may have compelling reasons for making contradic-tory statements.

If Nadeen testifies that Ernest did point the gun at her, she should have the opportunity to explain why she made the prior inconsistent statement.  If she so testifies, her testimony should be presented to the jury rather that being deemed insufficient as a matter of law.  It is the jury's role to weigh such testimony, in

light of all other admissible evidence, and determine the credibility and weight it deserves.

We have addressed a few possible scenarios which may occur if Nadeen is called to testify. Clearly there are other circumstances which may arise if the State calls Nadeen as a witness. It is precisely this uncertainty which renders the District Court's dismissal of the information premature.

We conclude that the District Court erred in dismissing the felony assault charge prior to trial. The dismissal was premature and the State should be given the opportunity to present its case-in-chief. This will allow the District Court to hear Nadeen's testimony, if any. With this evidence the District Court can more thoroughly and appropriately evaluate the merits of the State's case. We reverse the District Court's dismissal of the felony assault charge.

We conclude that the District Court's dismissal of the felony assault charge was based on insufficient evidence to convict. Therefore, we will not address the court's comments concerning the sufficiency of the affidavit for leave to file an information.

Because the District Court's dismissal of the misdemeanor domestic abuse charge depended upon the dismissal of the felony assault charge, we vacate that dismissal and remand for further proceedings consistent with this opinion.

/s/ J. A. Turnage
Chief Justice

We concur:

_Karla M. Gray_
_____

_____

_____

_Justices_

_James E. Purcell_
Hon. James E. Purcell, District
Judge, sitting in place of
Justice John C. Harrison, Retired

11

Justice William E. Hunt, Sr., dissenting.

I dissent from the majority opinion. A prior inconsistent statement cannot be the sole substantive evidence upon which a jury determines guilt. State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455; State v. White Water (1981), 194 Mont. 85, 634 P.2d 636. Our rationale for this prohibition has been that it is unlikely that a trier of fact could find the essential elements of a crime charged beyond a reasonable doubt based solely on a prior inconsistent statement. Gommenginger 790 P.2d at 463; White Water, 634 P.2d at 639.

In order to convict Ernest of felony assault under § 45-5-202, MCA, the State must prove that he purposely and knowingly caused Nadeen to reasonably apprehend serious bodily injury by use of a weapon. The majority reasons that because "it is unclear whether the potential, prior inconsistent statement would be the sole basis for seeking a conviction," the State should be given the chance to present its case in chief. However, in its brief in opposition to Ernest's motion to dismiss, the State, relying on State v. Charlo (1987), 226 Mont. 213, 735 P.2d 278, acknowledged that in order to convict Ernest of felony assault it would have to corroborate Nadeen's prior inconsistent statement. The State proposed to offer as corroboration Nadeen's physical appearance and emotional state on the night in question, evidence of the couple's argument at the saloon, and Ernest's physical possession of the gun. While the above might corroborate the charge of misdemeanor domestic abuse,

12

it does not corroborate Nadeen's prior inconsistent statement that Ernest pointed a gun at her head.

The district court may not dismiss a felony count without good cause and without setting forth its reasons for the dismissal in an order. Section 46-13-401(1), MCA. After applying Montana case law to the facts, the District Court found good cause for dismissing the felony assault charge against Ernest by concluding that under any testimonial scenario it would be impossible for a jury to find the essential element of § 45-5-202, MCA. The District Court then set forth those reasons in its order. There is nothing in the record to suggest that the District Court abused its discretion by granting Ernest's motion to dismiss. I would affirm.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing dissenting opinion.

_____
J stice

13